

JUDGE KAPLAN          08 CV 8503

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RECEIVED

08 OCT -4 PM 10: 26

U.S. DISTRICT COURT
S.D.N.Y.

---------------------------------------------------------------x

WACHOVIA CORPORATION,                    :

        Plaintiff,                       :

   – *against* –                           :          Civ Act. No.

CITIGROUP, INC,                          :

        Defendant.                       :

---------------------------------------------------------------x

## COMPLAINT

Plaintiff Wachovia Corporation ("Wachovia") by and through its undersigned counsel, states for its Complaint, with knowledge of its own acts and upon information and belief as to all other matters, as follows:

## SUMMARY OF THE ACTION

1.     This is an action for a declaratory judgment that a transaction Wachovia entered into with Wells Fargo Corp. ("Wells Fargo") on or around October 3, 2008 is valid, proper, and not prohibited by a letter agreement between Wachovia and Citigroup, Inc. ("Citigroup") dated September 29, 2008.

## THE PARTIES

2.     Wachovia Corporation is a North Carolina corporation with its principal place of business in Charlotte, North Carolina.

3.     Citigroup, Inc. is a Delaware corporation with its principal place of business in New York, New York.

Dockets.Justia.com

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1332 because the action is between citizens of different states and the matter in controversy exceeds $75,000 and because the action arises under the Emergency Economic Stabilization Act (the "EESA") signed into federal law on October 3, 2008.

5.     The acts and transactions constituting the violations alleged herein occurred in the Southern District of New York and elsewhere. The Defendant transacts business within this District. Accordingly, this Court has personal jurisdiction over the Defendant, and venue is proper under 15 U.S.C. § 22 and 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

6.     During the early morning hours of Monday, September 29, 2008, acting with the understanding that a seizure of its banking assets later that day by the Federal Deposit Insurance Corporation ("FDIC") would occur unless Wachovia accepted a proposal from Citigroup to acquire a substantial portion of Wachovia's banking operations, Wachovia entered into a non-binding "agreement-in-principle" that contemplated the acquisition by Citigroup of these operations for approximately $2.1 billion, or $1 per Wachovia share (the "Citigroup Transaction").

7.     Acting pursuant to its authority under Section 13 of the Federal Deposit Insurance Act ("FDIA"), 12 U.S.C. § 1832, the FDIC invoked the "systemic risk" provision of the FDIA, and committed to use taxpayer money to limit Citigroup's losses on Wachovia's $312 billion loan portfolio to $42 billion if the transaction was consummated.

8.     The FDIC informed Wachovia and Citigroup that, unless the deal was reduced to a final definitive agreement on or before Monday, October 6, 2008, the FDIC would place

Wachovia's banking assets into receivership, as it did with Washington Mutual Bank just the week before. Accordingly, on September 29, 2008, under pressure from the FDIC, Citigroup and Wachovia executed an "agreement-in-principle" setting forth the terms and conditions of the Citigroup Transaction (the "Non-Binding Term Sheet").

9.    Also on September 29, 2008, Citigroup entered into a Letter Agreement with Wachovia which purports, among other things, to prevent Wachovia from considering or entering into another agreement that would result in the acquisition of more than 15% of the equity or assets of Wachovia, even if such proposal is superior to the Citigroup Transaction, prior to October 6, 2008 (the "Letter Agreement"). The Letter Agreement, which has already been wrongfully disclosed to the press by Citigroup, is attached hereto as Exhibit A and incorporated by reference herein. By its terms, the Letter Agreement expires at 12:00 a.m. on Monday, October 6, 2008.

10.    Between September 29 and October 2, 2008, Wachovia worked tirelessly around the clock to reach a final and binding agreement with Citigroup. The inherent nature of Wachovia's fully integrated organization caused the negotiations over how to split apart the organization to be exceedingly complex. The likelihood of finalizing a definitive agreement with Citigroup was uncertain and numerous issues remained undecided.

11.    As negotiations with Citigroup continued during the evening of October 2, 2008, Wells Fargo made an unsolicited proposal to enter into a stock-for-stock merger with Wachovia (the "Wells Fargo Proposal"). Wachovia had had no contact with Wells Fargo between the execution of the Letter Agreement with Citigroup and the Wells Fargo Proposal. The unsolicited Wells Fargo Proposal was far superior to the Citigroup Transaction, contemplating an acquisition of all of Wachovia, without any taxpayer assistance from the FDIC, for consideration totaling

3

$15 billion, or approximately $7 per Wachovia share. During the night of October 2-3, the Wachovia board, consistent with its fiduciary duties under North Carolina law to the Wachovia shareholders, considered and approved the Wells Fargo Proposal. In the early morning of October 3, Wachovia and Wells Fargo entered into a definitive merger agreement (the "Wells Fargo Transaction"), which was announced prior to the opening of the markets that day.

12. Citigroup has, without basis, publicly announced that Wells Fargo has interfered with its Letter Agreement with Wachovia, provided the Letter Agreement to the press in violation of a confidentiality agreement with Wachovia, and asserted that the Wells Fargo Transaction is improper, unenforceable and prohibited by the Letter Agreement.

13. Citigroup's efforts to interfere with, undermine, and create uncertainty concerning the Wells Fargo Transaction severely damages Wachovia. The announcement of the Wells Fargo Transaction caused an increase of approximately $10 billion in the common and preferred stock of market capitalization of Wachovia. Unless the issues and threats raised by Citigroup are resolved promptly, Wachovia's shareholders, creditors, and employees are at risk as are the interests of the public generally.

14. Citigroup is not prohibited by the Wells Fargo Transaction from offering a better proposal than that offered by Wells Fargo. However, instead of competing with Wells Fargo, Citigroup seeks to bar competition by interfering with the ability of Wachovia and Wells Fargo to complete a transaction far superior to Wachovia, and the American taxpayer, than anything Citigroup is prepared to offer.

## DECLARATORY JUDGMENT CLAIM

### (Declaration that the Wells Fargo Transaction is Valid, Proper, and Not Prohibited by the Letter Agreement)

15.     Wachovia incorporates herein by reference and realleges the allegations of each of the preceding paragraphs.

16.     Section 126(c) of the Emergency Economic Stabilization Act of 2008 ("EESA") provides that:

> UNENFORCEABILITY OF CERTAIN AGREEMENTS – No provision contained in any existing or future standstill, confidentiality, or other agreement that, directly or indirectly –
>
> > (A) affects, restricts, or limits the ability of any person to offer or acquire,
> >
> > (B) prohibits any person from offering to acquire or acquiring, or
> >
> > (C) prohibits any person from using any previously disclosed information in connection with any such offer to acquire or acquisition of,
>
> all or part of any insured depository institution, including any liabilities, assets, or interest therein, in connection with any transaction in which the [FDIC] exercises its authority under section 11 or 13, shall be enforceable against or impose any liability on such person, as such enforcement or liability shall be contrary to public policy.

17.     Moreover, one of the purposes of the EESA is to protect the interests of the "taxpayers of the United States" as well as shareholders and creditors of the affected companies.

18.     In addition, as alleged above, Citigroup contends the Letter Agreement restricts the Wachovia Board of Directors from considering, negotiating, or accepting proposals for merger or acquisition even if such proposals are far more advantageous to Wachovia's shareholders, and the taxpayers of the United States, than the Citigroup Transaction.

19.     The Wells Fargo Proposal is far more advantageous to the Wachovia shareholders, and to the taxpayers of the United States, than the Citigroup Transaction.

20. The Letter Agreement was existing at the time of enactment of the EESA and purports to prevent or limit other offers to acquire Wachovia (including the Wells Fargo Transaction), even where such offers are more beneficial to Wachovia and to taxpayers. As such, the Letter Agreement is "contrary to public policy" and not enforceable under the EESA.

21. In addition, if (as Citigroup contends) the Letter Agreement restricts the Wachovia Board of Directors from considering, negotiating or approving the Wells Fargo Proposal—or any other transaction that is superior to the Citigroup Transaction—in accordance with the directors' fiduciary obligations, then the Letter Agreement would be invalid and unenforceable under state law because it purports to bar Wachovia's Board from informing Wachovia's shareholders of the superior Wells Fargo offer and from accepting that offer.

WHEREFORE, Wachovia requests that this Court:

(a) Enter an order declaring that the Wells Fargo Transaction is valid, proper and not prohibited by the Letter Agreement; and

(b) Award Wachovia such other relief, damages, attorneys' fees, and costs as may be just and proper.

Dated: October 4, 2008

Respectfully submitted,

BOIES, SCHILLER & FLEXNER, LLP

*[signature]*

David Boies
333 Main Street
Armonk, New York 10504
Phone: (914) 749-8200
Fax: (914) 749 8300

George T. Frampton, Jr.
575 Lexington Avenue, 7th Floor
New York, New York 10022
Phone: (212) 446-2300
Fax: (212) 446-2350

# EXHIBIT A

Citigroup Inc.

September 29, 2008

Wachovia Corporation

Ladies and Gentlemen:

Citigroup Inc. ("Citigroup") and Wachovia Corporation ("Wachovia") are party to that non-binding term sheet dated September 29, 2008 (the "**Term Sheet**") setting forth the terms and conditions of a proposed transaction between them (the "**Transaction**"). Citigroup and Wachovia will continue to proceed to negotiate definitive agreements (the "**Definitive Documentation**") relating to the Transaction in form and substance satisfactory to each of them with a view to executing such Definitive Documentation prior to October 6, 2008 (the "**Exclusivity Termination Date**").

In consideration of the foregoing and other good and valuable consideration the receipt and adequacy of which are hereby acknowledged, Wachovia hereby agrees that, during the period commencing on the date hereof and ending on Exclusivity Termination Date, Wachovia shall not, and shall not permit any of its subsidiaries or any of its or their respective officers, directors, employees, investment bankers, attorneys, accountants, consultants or other agents or advisors ("**Representatives**") to, directly or indirectly, (i) solicit, initiate or take any action to facilitate or encourage the submission of any Acquisition Proposal, (ii) enter into or participate in any discussions or negotiations with, furnish any information relating to Wachovia or any of its subsidiaries, assets or businesses or afford access to the business, properties, assets, books or records of Wachovia or any of its subsidiaries to, otherwise cooperate in any way with, or knowingly assist, participate in, facilitate or encourage any effort by, any third party that is seeking to make, or has made, an Acquisition Proposal, (iii) grant any waiver or release under any standstill or similar agreement with respect to any class of equity securities of Wachovia or (iv) enter into any agreement in principle, letter of intent, term sheet, merger agreement, acquisition agreement, option agreement or other similar instrument relating to an Acquisition Proposal. As of the date hereof, Wachovia will, and will cause its Representatives to, terminate any discussions or negotiations with respect to any Acquisition Proposal.

"**Acquisition Proposal**" means, other than the Transaction, any offer, proposal or inquiry relating to, or any third party indication of interest in, (i) any acquisition or purchase, direct or indirect, of 15% or more of the consolidated assets of Wachovia, or over 15% of any class of equity or voting securities of Wachovia or any of its subsidiaries whose assets, taken as a whole, constitute more than 15% of the consolidated assets of Wachovia, (ii) any tender offer (including a self-tender offer) or exchange offer that, if consummated, would result in such third party's beneficially owning 15% or more of any

class of equity or voting securities of Wachovia or any of its subsidiaries whose assets, taken as a whole, constitute more than 15% of the consolidated assets of Wachovia, (iii) a merger, consolidation, share exchange, business combination, reorganization, recapitalization, liquidation, dissolution or other similar transaction involving Wachovia or any of its subsidiaries whose assets, individually or in the aggregate, constitute more than 15% of the consolidated assets of Wachovia or (iv) any other transaction the consummation of which could reasonably be expected to impede, interfere with, prevent or materially delay the Transaction or that could reasonably be expected to dilute materially the benefits to Citigroup of the Transaction.

The parties agree that in the event of any breach of this letter agreement, the parties would be irreparably harmed and could not be made whole by monetary damages. Each party accordingly agrees (i) not to assert by way of defense or otherwise that a remedy at law would be adequate and (ii) that the remedy of specific performance of this letter agreement is appropriate in any action in court, in addition to any other remedy to which such party may be entitled.

This agreement shall be governed by, and construed in accordance with, the laws of the State of New York. The parties hereby irrevocably and unconditionally submit to the exclusive jurisdiction of any state or federal court sitting in New York City, Borough of Manhattan, over any suit, action or proceeding arising out of or relating to this letter agreement. The parties hereby irrevocably and unconditionally waive any objection to the laying of venue of any such suit, action or proceeding brought in any such court and any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum. The parties hereby agree that a final judgment in any such suit, action or proceeding brought in any such court shall be conclusive and binding upon you and may be enforced in any other courts to whose jurisdiction the parties are or may be subject by suit upon such judgment.

This letter agreement may be executed in counterparts, either one of which need not contain the signature of more than one party, but both such counterparts taken together will constitute one and the same agreement.

If the foregoing accurately summarizes our understanding, we request that you approve this letter agreement and evidence such approval by causing a copy of this letter agreement to be executed and returned to the undersigned.

Very truly yours,

CITIGROUP INC.

By: _____
Name: GARY L. CRITTENDEN
Title: CFO

Agreed and accepted:

WACHOVIA CORPORATION

By: _____
Name:
Title:

Citigroup Inc.

September 29, 2008

Wachovia Corporation

Ladies and Gentlemen:

Citigroup Inc. ("Citigroup") and Wachovia Corporation ("Wachovia") are party to that non-binding term sheet dated September 29, 2008 (the "**Term Sheet**") setting forth the terms and conditions of a proposed transaction between them (the "**Transaction**"). Citigroup and Wachovia will continue to proceed to negotiate definitive agreements (the "**Definitive Documentation**") relating to the Transaction in form and substance satisfactory to each of them with a view to executing such Definitive Documentation prior to [DATE] (the "**Exclusivity Termination Date**").

*[handwritten margin note: JCS October 6, 2008]*

In consideration of the foregoing and other good and valuable consideration the receipt and adequacy of which are hereby acknowledged, Wachovia hereby agrees that, during the period commencing on the date hereof and ending on Exclusivity Termination Date, Wachovia shall not, and shall not permit any of its subsidiaries or any of its or their respective officers, directors, employees, investment bankers, attorneys, accountants, consultants or other agents or advisors ("**Representatives**") to, directly or indirectly, (i) solicit, initiate or take any action to facilitate or encourage the submission of any Acquisition Proposal, (ii) enter into or participate in any discussions or negotiations with, furnish any information relating to Wachovia or any of its subsidiaries, assets or businesses or afford access to the business, properties, assets, books or records of Wachovia or any of its subsidiaries to, otherwise cooperate in any way with, or knowingly assist, participate in, facilitate or encourage any effort by, any third party that is seeking to make, or has made, an Acquisition Proposal, (iii) grant any waiver or release under any standstill or similar agreement with respect to any class of equity securities of Wachovia or (iv) enter into any agreement in principle, letter of intent, term sheet, merger agreement, acquisition agreement, option agreement or other similar instrument relating to an Acquisition Proposal. As of the date hereof, Wachovia will, and will cause its Representatives to, terminate any discussions or negotiations with respect to any Acquisition Proposal.

"**Acquisition Proposal**" means, other than the Transaction, any offer, proposal or inquiry relating to, or any third party indication of interest in, (i) any acquisition or purchase, direct or indirect, of 15% or more of the consolidated assets of Wachovia, or over 15% of any class of equity or voting securities of Wachovia or any of its subsidiaries whose assets, taken as a whole, constitute more than 15% of the consolidated assets of Wachovia, (ii) any tender offer (including a self-tender offer) or exchange offer that, if consummated, would result in such third party's beneficially owning 15% or more of any

class of equity or voting securities of Wachovia or any of its subsidiaries whose assets, taken as a whole, constitute more than 15% of the consolidated assets of Wachovia, (iii) a merger, consolidation, share exchange, business combination, reorganization, recapitalization, liquidation, dissolution or other similar transaction involving Wachovia or any of its subsidiaries whose assets, individually or in the aggregate, constitute more than 15% of the consolidated assets of Wachovia or (iv) any other transaction the consummation of which could reasonably be expected to impede, interfere with, prevent or materially delay the Transaction or that could reasonably be expected to dilute materially the benefits to Citigroup of the Transaction.

The parties agree that in the event of any breach of this letter agreement, the parties would be irreparably harmed and could not be made whole by monetary damages. Each party accordingly agrees (i) not to assert by way of defense or otherwise that a remedy at law would be adequate and (ii) that the remedy of specific performance of this letter agreement is appropriate in any action in court, in addition to any other remedy to which such party may be entitled.

This agreement shall be governed by, and construed in accordance with, the laws of the State of New York. The parties hereby irrevocably and unconditionally submit to the exclusive jurisdiction of any state or federal court sitting in New York City, Borough of Manhattan, over any suit, action or proceeding arising out of or relating to this letter agreement. The parties hereby irrevocably and unconditionally waive any objection to the laying of venue of any such suit, action or proceeding brought in any such court and any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum. The parties hereby agree that a final judgment in any such suit, action or proceeding brought in any such court shall be conclusive and binding upon you and may be enforced in any other courts to whose jurisdiction the parties are or may be subject by suit upon such judgment.

This letter agreement may be executed in counterparts, either one of which need not contain the signature of more than one party, but both such counterparts taken together will constitute one and the same agreement.

If the foregoing accurately summarizes our understanding, we request that you approve this letter agreement and evidence such approval by causing a copy of this letter agreement to be executed and returned to the undersigned.

Very truly yours,

CITIGROUP INC.

By: _____
Name:
Title:

Agreed and accepted:

WACHOVIA CORPORATION

By: _____
Name:
Title:

# Exhibit B

**Wachovia Corporation**

**Media**
Mary Eshet      Christy Phillips-Brown
704-383-7777   704-383-8178

**Investors**
Alice Lehman   Ellen Taylor
704-374-4139   212-214-1904

**Wells Fargo & Company**

**Media**
Janis Smith     Larry Haeg
415-396-7711   612-667-5266

**Investors**
Jim Rowe        Bob Strickland
415-396-8216   612-667-7919

# WELLS FARGO, WACHOVIA AGREE TO MERGE

## *CREATING PREMIER COAST-TO-COAST FINANCIAL SERVICES FRANCHISE*

### *Without government assistance*

SAN FRANCISCO and CHARLOTTE, October 3, 2008 – Wells Fargo & Company (NYSE:WFC) and Wachovia Corporation (NYSE:WB) said today they have signed a definitive agreement for the merger of the two companies including all of Wachovia's banking operations in a whole company transaction requiring no financial assistance from the Federal Deposit Insurance Corporation (FDIC) or any other government agency.

Under the agreement, Wells Fargo will acquire all outstanding shares of common stock of Wachovia in a stock-for-stock transaction. In the transaction, Wells Fargo will acquire all of Wachovia Corporation and all its businesses and obligations, including its preferred equity and indebtedness, and all its banking deposits.

Under terms of the agreement, which has been approved unanimously by the boards of both companies, Wachovia shareholders will receive 0.1991 shares of Wells Fargo common stock in exchange for each share of Wachovia common stock. The transaction, based on Wells Fargo's closing stock price of $35.16 on October 2, 2008, is valued at $7.00 per Wachovia common share for a total transaction value of approximately $15.1 billion. Wachovia has almost 2.2 billion common shares outstanding. The agreement requires the approval of Wachovia shareholders and customary approvals of regulators.

Wells Fargo will record Wachovia's credit-impaired assets at fair value. The acquisition is expected to exceed Wells Fargo's internal rate of return goal and add to Wells Fargo's earnings per share in the first year of operations, excluding integration costs, write-downs, transaction charges, and credit reserve build. Wells Fargo expects to incur merger and integration charges of approximately $10 billion. To maintain its strong capital position, Wells Fargo intends to issue up to $20 billion of new Wells Fargo securities, primarily common stock.

"We at Wachovia have great admiration and respect for the people and businesses at Wells Fargo and we are extremely pleased to join forces with this outstanding company," said Robert K. Steel, President and CEO of Wachovia Corp. "Today's announcement creates one of the strongest financial firms in the world and is great for all Wachovia constituencies: our shareholders, customers, colleagues and communities. This deal enables us to keep Wachovia intact and preserve the value of an integrated

company, without government support. The market presence and composition of our businesses, along with our service-oriented cultures, are extraordinarily complementary and this combination creates great potential for sustained stability and growth."

"This agreement represents a compelling value for Wachovia shareholders," said Wells Fargo Chairman Dick Kovacevich. "It provides superior value compared to the previous offer to acquire only the banking operations of the company and because Wachovia shareholders will have a meaningful opportunity to participate in the growth and success of a combined Wachovia-Wells Fargo that will be one of the world's great financial services companies. We are combining the industry's number one ranking customer service culture of Wachovia with the industry's number one sales and cross-selling culture of Wells Fargo. The best in service and the best in sales, an unbeatable combination. Wachovia shareholders also will benefit from holding the stock of a strong financial institution, the U.S. bank with the highest credit ratings and with a long history of increasing dividends on its common stock. Wachovia's brokerage and asset management businesses, which would have been left behind in the prior proposal, are tightly interwoven with Wachovia's core banking business – and this agreement avoids the complexity and unavoidable loss of value in trying to separate them, which would have disrupted Wachovia's team members and customers. We also bring to this merger agreement our 157 years of experience in financial services and the unparalleled convenience we can offer Wachovia customers through one of the most extensive financial services distributions systems in North America. We have the highest regard

for the quality and commitment and caring of Wachovia team members. We believe their demonstrated commitment to outstanding customer service and their highest standards of community leadership are identical to our own values. And, of course, this agreement won't require even a penny from the FDIC."

The combined company will have a strong presence in Charlotte, which will be the headquarters for the combined company's East Coast retail and commercial and corporate banking business. St. Louis will remain the headquarters of Wachovia Securities. In addition, three members of the Wachovia Board will be invited to join the Wells Fargo & Company Board when the transaction is completed.

Kovacevich said "This agreement is an outstanding opportunity for Wachovia common and preferred shareholders and debt holders, team members and customers, for the Charlotte and St. Louis communities and indeed all of the communities that Wachovia serves, and for the U.S. government and our banking system. It makes compelling business and strategic sense and is simply an incredible fit that will result in an immensely strong, stable financial services company that will carry on Wachovia's proud tradition of being one of the very best financial institutions in the world."

"We know this has been a time of great uncertainty for Wachovia team members and many of its customers as their company has gone through a very painful and challenging time of unprecedented change in our industry," said Wells Fargo President

and CEO John Stumpf. "We want to assure them we'll do everything we can to make the integration of our operations as smooth as possible. An important measure of success for this integration will be our ability to retain as many of the talented Wachovia team members as possible so they can continue to provide outstanding service and financial advice to their customers and continue their careers with Wells Fargo."

The combined company will be one of North America's most extensive financial services distribution networks:

*6/30/08*

| | Wells Fargo | Wachovia | Combined |
|---|---|---|---|
| Assets | $609 billion | $812 billion | $1.42 trillion |
| Deposits | $339 billion | $448 billion | $787 billion |
| Customers | 28 million | 20 million | 48 million * |
| Assets under Mgt. (Mutual Funds) | $151 billion | $107 billion | $258 billion |
| Stores | 5,941 | 4,820 | 10,761 |
| ATMs | 6,950 | 5,277 | 12,227 |
| Team Members | 160,000 | 120,000 | 280,000 |

* *unadjusted for customer overlap*

Wells Fargo's Chief Financial Officer Howard Atkins said Wells Fargo used conservative assumptions in evaluating this opportunity. "As always, we only consider acquisitions that add to earnings per share no later than the third year after purchase and earn an internal rate of return of at least 15 percent," said Atkins. "This acquisition comfortably exceeds all our financial requirements. This is a unique opportunity to expand both our Community Banking and Wholesale Banking presence in current

markets and enter some new markets by acquiring another full service financial services retail banking company with a strong culture of customer service and community involvement very similar to ours."

Wells Fargo and Wachovia will create the nation's premier coast-to-coast community banking presence. The combined company will have community banks in 39 states and the District of Columbia. The acquisition will establish a Wells Fargo Community Banking presence for the first time in Alabama, Connecticut, Delaware, Florida, Georgia, Kansas, Maryland, Mississippi, New Jersey, New York, North Carolina, Pennsylvania, South Carolina, Tennessee, Virginia and Washington, D.C. Wells Fargo already has a Community Banking presence in Alaska, Arizona, Arkansas (pending), California, Colorado, Idaho, Illinois, Indiana, Iowa, Michigan, Minnesota, Montana, Nebraska, Nevada, New Mexico, North Dakota, Ohio, Oregon, South Dakota, Texas, Utah, Washington, Wisconsin, and Wyoming.

The combined company will be #1 in deposit market share * in 17 of its 39 Community Banking states: Alaska, Arizona, California, Colorado, Florida, Georgia, Idaho, Minnesota, Iowa, Montana, Nebraska, New Jersey, New Mexico, North Carolina, South Dakota, Texas, and Virginia. Ninety-three percent of its deposits will be in states in which it ranks #1, 2 or 3 and the combined company will rank #1 in ten of the nation's 20 largest Metropolitan Statistical Areas (MSAs) in deposit market share. *

*excludes deposits greater than $500 million in a single banking store*

Wells Fargo also is the nation's:

- #1 small business lender,
- #1 agricultural lender,
- #1 commercial real estate broker,
- #2 largest mortgage originator,
- #2 largest mortgage servicer,
- #2 largest debit card issuer,
- #1 financial services provider to middle market businesses in the western U.S. and a national presence in commercial banking (29 states),
- largest bank-owned U.S. insurance brokerage

In connection with the agreement, Wachovia and Wells Fargo entered into a share exchange agreement under which Wachovia is issuing Wells Fargo preferred stock that votes as a single class with Wachovia's common stock representing 39.9 percent of Wachovia's voting power.

Wells Fargo was advised on the transaction by Wachtell, Lipton, Rosen & Katz and JPMorgan Securities, Inc. was the exclusive financial advisor to Wells Fargo. Wachovia was advised on the transaction by Sullivan & Cromwell LLP, Goldman Sachs & Co. and Perella Weinberg Partners.

Wells Fargo & Company is a diversified financial services company with $609 billion in assets, providing banking, insurance, investments, mortgage and consumer finance through almost 6,000 stores and the internet (wellsfargo.com) across North America and elsewhere internationally. Wells Fargo Bank, N.A. is the only bank in the U.S., and one of only two banks worldwide, to have the highest possible credit rating from both

Moody's Investors Service, "Aaa," and Standard & Poor's Ratings Services, "AAA."

## FORWARD-LOOKING STATEMENTS

This news release contains forward-looking statements about Wells Fargo and Wachovia and the proposed transaction between the companies. There are several factors – many beyond Wells Fargo's control – that could cause actual results to differ significantly from expectations described in the forward-looking statements. Among these factors are the receipt of necessary regulatory approvals and the approval of Wachovia shareholders. Forward-looking statements speak only as of the date they are made, and we do not undertake any obligation to update them to reflect changes that occur after that date.

For a discussion of factors that may cause actual results to differ from expectations, refer to each company's Quarterly Report on Form 10-Q for the quarter ended June 30, 2008, and Annual Report on Form 10-K for the year ended December 31, 2007, including information incorporated into each company's 10-K from their respective 2007 annual reports, filed with the Securities and Exchange Commission (SEC) and available on the SEC's website at www.sec.gov.

## MORE INFORMATION ABOUT THE MERGER AND WHERE TO FIND IT

The proposed merger will be submitted to Wachovia Corporation shareholders for their consideration. Wells Fargo will file with the Securities and Exchange Commission ("SEC") a registration statement on Form S-4 that will include a proxy statement of Wachovia Corporation that also constitutes a prospectus of Wells Fargo. Wachovia Corporation will mail the proxy statement-prospectus to its shareholders. Wachovia shareholders and other investors are urged to read the final proxy statement-prospectus when it becomes available because it will describe the proposed merger and contain other important information. You may obtain copies of all documents filed with the SEC regarding the proposed merger, free of charge, at the SEC's website (www.sec.gov). You may also obtain free copies of these documents by contacting Wells Fargo or Wachovia, as follows:

Wells Fargo & Company, Attention Corporate Secretary, MAC N9305-173, Sixth and Marquette, Minneapolis, Minnesota 55479, (612) 667-0087.

Wachovia Corporation, Investor Relations, One Wachovia Center, 301 South College Street, Charlotte, North Carolina 28288, (704) 374-6782

Wells Fargo and Wachovia and their respective directors and executive officers may be deemed to be participants in the solicitation of proxies from Wachovia Corporation shareholders in connection with the proposed merger. Information about Wells Fargo's directors and executive officers and their ownership of Wells Fargo common stock is contained in the definitive proxy statement for Wells Fargo's 2008 annual meeting of

stockholders, as filed by Wells Fargo with the SEC on Schedule 14A on March 17, 2008. Information about Wachovia's directors and executive officers and their ownership of Wachovia common stock is contained in the definitive proxy statement for Wachovia's 2008 annual meeting of shareholders, as filed by Wachovia with the SEC on Schedule 14A on March 10, 2008. You may obtain a free copy of these documents by contacting Wells Fargo or Wachovia at the contact information provided above. The proxy statement-prospectus for the proposed merger will provide more information about participants in the solicitation of proxies from Wachovia Corporation shareholders.

## CONFERENCE CALL UPDATE
Wells Fargo will host a conference call Friday, October 3, 2008, at 6:30 a.m. (Pacific Time) to review the acquisition. Investors can call 877-425-9480 (domestic) and (210) 689-8848 (international) with the access code 299254, or listen via live audio webcast. The live audio webcast and presentation visuals will be available on http://www.wellsfargo.com/invest_relations/presents. A replay of the conference call will be available through October 10, 2008 at (877) 660-6853 (domestic) and (201) 612-7415 (international). Enter account 286 and Conference ID 299254. The replay also will be available online.