UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

WACHOVIA CORPORATION,

                **Plaintiff,**

   -against-

CITIGROUP, INC.

                **Defendant.**

08 CV 8503 (LAK)

AFFIDAVIT OF ROBERT K. STEEL

Robert K. Steel, being first duly sworn, states as follows:

1. I am of sound mind and over 21 years of age. I generally have an understanding and in many cases first hand knowledge of the matters set forth in this Affidavit.

2. I am employed by Wachovia Corporation ("Wachovia"), and I serve as President and Chief Executive Officer of the company. I am also a member of the board of directors of Wachovia. In that capacity, I have been actively and personally involved in the various transactions that Wachovia has considered and negotiated as it has evaluated its strategic alternatives in response to events in the financial markets. In particular, I was involved in the negotiations that Wachovia has had with Citigroup Inc. ("Citigroup") relating to Citigroup's proposed purchase of Wachovia's banking subsidiaries and certain other assets. I have also been involved in the negotiations and discussions that Wachovia has had with representatives of the federal government and with Wells Fargo & Co. ("Wells"). The following chronology is based upon my best recollection and on information provided me by senior Wachovia participants in the events.

3. On September 25, 2008, the Federal Deposit Insurance Corporation (FDIC) seized the banking assets of Washington Mutual Inc. and placed it into receivership. On

that same day, the House of Representatives failed to pass the financial "bailout" package. These two events resulted in significant downward financial pressure in the market on the price of Wachovia stock.

4.  On September 26, in response to these concerns, Wachovia and Citigroup entered into a Confidentiality Agreement and initiated intense substantive negotiations regarding a possible acquisition of Wachovia by Citigroup. On that same date, Wachovia and Wells Fargo likewise entered a Confidentiality Agreement.

5.  On Saturday, September 27, I had a discussion with Chairman of Wells Fargo, Richard M. Kovacevich, in which Mr. Kovacevich indicated that Wells Fargo was interested in purchasing all of Wachovia in a stock-for-stock purchase. Mr. Kovacevich further indicated to me that the Wells Fargo proposed transaction would not require support from the FDIC and that a merger agreement could be executed before the market opened on Monday.

6.  Both Wells Fargo and Citigroup conducted extensive due diligence investigations of Wachovia on September 27 and 28. Wachovia's outside counsel, Sullivan & Cromwell, prepared and transmitted a draft Agreement and Plan of Merger to the counsel for Wells Fargo, Wachtell, Lipton, Rosen & Katz. Mr. Kovacevich again indicated to me that Wells Fargo was interested in purchasing all of Wachovia in a stock-for-stock purchase without FDIC assistance. Representatives of Citigroup had indicated to me that their interest was to acquire only Wachovia's banking subsidiaries, with an FDIC guarantee and assistance.

7. At approximately 6:00 p.m. on Sunday, September 28, Mr. Kovacevich informed me that Wells Fargo was not prepared on such a compressed timetable to offer to acquire Wachovia without substantial government assistance.

8. Shortly after I spoke with Mr. Kovacevich, Sheila Bair, Chairman of the Federal Deposit Insurance Corporation ("FDIC") contacted me by telephone. She advised me that that the FDIC believed that no transaction with Citigroup or Wells Fargo could be effected without substantial government assistance. Chairman Bair confirmed that in the FDIC's view this situation posed a systemic risk to the banking system, and that the FDIC was prepared to exercise its powers under Chapter 13 of the Federal Deposit Insurance Act to effect an open bank assisted transaction. Subsequently, Chairman Bair directed Wachovia to commence negotiations with Citi.

9. Wachovia had a telephonic board meeting on the morning of September 29 at approximately 6:30 a.m. I participated in that Board meeting. The company's advisors and I informed the Board that Wachovia had two options: (1) to place Wachovia Corporation into bankruptcy and its banking subsidiaries into receivership; or (2) to negotiate the transaction with the FDIC and Citigroup. The Board voted in favor of proceeding with the transaction with the FDIC and Citigroup.

10. On behalf of Wachovia, Jane Sherburne, Wachovia's General Counsel, proceeded to sign the three-party Agreement-in-Principle with the FDIC and Citigroup, attached hereto as <u>Exhibit A</u>. That document, which by its terms is not binding on any of the parties thereto, set forth certain basic terms of a transaction. The

Agreement-in-Principle provided that there was no binding agreement between the parties unless and until the parties enter into definitive agreements that provided for all necessary terms and conditions of a transaction that were satisfactory to each party. Any definitive agreement would require the approval of Wachovia's Board and its shareholders to be effective.

11. Under the proposed terms in the Agreement-in-Principle, Citigroup would acquire Wachovia's banking subsidiaries but not Wachovia Securities, Evergreen Investments, certain insurance-related businesses and other businesses or Wachovia itself. Thus, the transaction proposed in the Agreement-in-Principle would require the separation of some business units that are functionally and operationally integrated. Under the terms of the Agreement-in-Principle, the FDIC committed to use taxpayer money to limit Citigroup's losses on a $312 billion loan portfolio to $42 billion if the transaction were consummated and the FDIC was to receive $12 billion of preferred stock in Citigroup.

12. Jane Sherburne also signed a Letter Agreement between Citigroup and Wachovia dated September 29, 2008, attached hereto as Exhibit B (the "Exclusivity Agreement"). Ms. Sherburne was given no opportunity to modify or negotiate these documents before signing.

13. Since the signing of the Agreement-in-Principle and Exclusivity Agreement, I have participated on behalf of Wachovia in the negotiations with Citigroup toward reaching definitive agreements that would be presented to Wachovia's Board and shareholders for approval. Those negotiations began immediately and

were conducted earnestly and in good faith by a team of Wachovia employees and outside advisors.

14. These negotiations proved extremely complicated and difficult.

15. Wachovia was under tremendous pressure from Citi and the regulators to conclude a transaction with Citigroup with definitive agreements by the following Monday, October 6, 2008. On multiple occasions I and our advisors attempted to persuade Citigroup to structure a whole – company transaction because of its substantially reduced completion risk, but Citigroup refused.

16. On October 2, 2008 at approximately 7:15p.m., I received an unexpected call from Chairman Bair. She asked if I had heard from Mr. Kovacevich I assured her I had not spoken to him since the initiation of the negotiations with Citi. She advised me that it was her understanding that he would be calling me to propose a merger transaction that would result in Wachovia's shareholders receiving $7.00 per share of Wells Fargo common stock and encouraged me to give serious consideration to that offer. As I was on an airplane and about to take off, I asked Chairman Bair to call Jane Sherburne. Chairman Bair shortly thereafter called Ms. Sherburne and provided details on the proposed transaction to her. Chairman Bair acknowledged that the Wells Fargo proposal sounded superior to the Citi proposal. Mr. Sherburne advised Ms. Bair that unless Wachovia had a signed and Board-approved merger agreement from Wells Fargo, it could not consider this proposal. Ms. Bair said she would so inform Mr. Kovacevich.

17. When my plane landed in North Carolina later that evening, I returned Chairman Bair's call to further understand Mr. Kovacevich's proposal. She described it to me as requiring no government support with no risk to the FDIC Fund.

18. At approximately 9:00p.m., I received a call from Mr. Kovacevich telling me that momentarily he would be sending me a signed, Board-approved, merger agreement for the acquisition of all of Wachovia. At approximately 9:04 p.m., I received an email from Mr. Kovacevich attaching an executed Agreement and Plan of Merger between Wachovia and Wells Fargo, which is attached hereto as Exhibit C (the "Merger Agreement"). That Agreement was for a stock-for-stock transaction that would result in Wachovia's shareholders receiving Wells Fargo stock worth approximately $7.00 per share of common stock.

19. Wachovia's board of directors met by telephone conference call at approximately 11:00 p.m. to review the Wells Fargo Proposal. I participated in the board meeting by telephone. At that meeting, Wachovia's financial advisors, Goldman Sachs and Perella Weinberg Partners, both advised the Board that they were prepared, subject to completion of remaining limited due diligence investigations and final financial analysis, to provide their opinions to the Board that the consideration to be received by Wachovia shareholders in the proposed Wells Fargo transaction would be fair from a financial point of view. The company's advisors and I told the Board that we believed that unless a definitive merger agreement was signed with either Citigroup or Wells Fargo by the end of the day Friday, October 3 that the FDIC was prepared to place Wachovia's banking subsidiaries into receivership. After extensive consideration and discussion by

the Board, the Board approved accepting the Wells Fargo Proposal subject to receipt of fairness opinions from Goldman Sachs and Perella Weinberg Partners. Goldman Sachs and Perella Weinberg Partners delivered their fairness opinions orally early in the morning of Friday, October 3. I executed the Agreement and Plan of Merger, and together with Jane Sherburne called Mr. Kovacevich to inform him of the approval of Wachovia's Board of the Wells Fargo proposal. Chairman Bair, Jane Sherburne and I then called Vikram Pandit, Chairman of Citigroup, to inform him that Wachovia had entered into the Wells Fargo Agreement and Plan of Merger.

20. Between the execution of the Exclusivity Agreement with Citigroup on September 29 and receiving the telephone call from Mr. Kovacevich on October 2, I had no contact with Wells Fargo other than at 9:00 a.m. on September 29 when he called me by telephone to congratulate Wachovia on its deal with Citi. I did not have any contact with Wells Fargo during that period nor did I direct anyone else to have such contact. Prior to Wachovia's execution of the Agreement-in-Principle and Exclusivity Agreement, Wells Fargo had conducted extensive due diligence on Wachovia and had access to the data room that Wachovia made available to potential acquirers. To the best of my knowledge, after Wachovia signed the Agreement-in-Principle and Exclusivity Agreement, with Citigroup Wells Fargo did not access the data room.

21. I have compared the Citigroup proposal to the proposal that Wachovia received from Wells Fargo. The Wells Fargo Proposal, in my opinion, is for superior to the Citigroup proposal for a number of reasons, among them the following:

- the price to shareholders is substantially greater;
- it is a whole company transaction - the Citigroup transaction separates the existing Wachovia franchise and destroys the potential future earnings power of wealth management, retail financial advisory and general banking together in a combined entity;
- all Wachovia preferred stock is assumed by Wells Fargo- the Citigroup proposal would have Wachovia cease paying preferred stock dividends and then launch an exchange offer based on 45% of liquidation preference;
- no government assistance is required for the Wells Fargo transaction;
- unlike the Citigroup proposal, the Wells Fargo transaction does not trigger any rights by Prudential Financial under the Wachovia Securities JV, pursuant to which Wachovia could be exposed to liabilities in excess of $5 billion;
- it does not force a division of Wachovia Securities by extracting the Investment Service Group—Branch Channel out of the branch banks from the rest of Wachovia Securities;
- the surviving company will continue to pay common stock dividends ($0.067 per quarterly share pro forma); whereas the Citigroup proposal would have Wachovia cease paying a common stock dividend;
- Wells Fargo is the only AAA-rated financial institution by the rating agencies, which provides a lower cost of funding for the surviving entity.  Citigroup's proposal leaves the surviving Wachovia Corporation in a position where its debt would likely be below investment grade because Citigroup proposes to keep the deposit spread on Wachovia Securities' sweep deposits and thereby deprive Wachovia of a needed source of funding;
- The entire transaction structure is simpler, easier for shareholders to understand, more likely to close and more likely to receive shareholder approval that the Citigroup offer.

22. According to recent news coverage and releases, Citigroup has publicly announced that Well Fargo has interfered with its Exclusivity Agreement with Wachovia, provided the Exclusivity Agreement to the press in violation of a Confidentiality Agreement, and asserted that the Wells Fargo Transaction is improper, unenforceable and prohibited by the Exclusivity Agreement.

23. Citigroup's efforts to undermine and create uncertainty about the Wells Fargo Transaction severely damages Wachovia. The announcement of the Wells Fargo Proposal caused an increase of approximately $10 billion in the common and preferred stock of market capitalization of Wachovia. Unless the issues and threats raised by Citigroup are resolved promptly, Wachovia's shareholders, creditors, retirees and employees are at risk as are the interests of the public generally.

I do declare under penalty of perjury that the foregoing is true and correct.

_____
Robert K. Steel

Sworn to before me this
5th day of October, 2008

_____
Notary Public

JOHN A. PASTERICK
NOTARY PUBLIC, STATE OF NEW YORK
NO.01PA6082750
QUALIFIED IN NEW YORK COUNTY
COMMISSION EXPIRES 11/04/2010

9