**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| **WACHOVIA CORPORATION** : | **Case No. 08 CV 8503 (LAK)** |
| : | |
| **Plaintiff,** : | |
| : | |
| -against- : | |
| : | |
| : | |
| **CITIGROUP, INC.** : | |
| : | |
| **Defendant.** : | |
| : | |

---

## MOTION FOR LEAVE TO FILE CORRECTED MEMORANDUM OF LAW IN SUPPORT OF WACHOVIA CORPORATION'S MOTION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUCTION AND, IN THE ALTERNATIVE, AN EXPEDITED TRIAL

Plaintiff Wachovia Corporation ("Wachovia") respectfully moves to file the attached Corrected Memorandum of Law in Support of Wachovia Corporation's Motion for a Temporary Restraining Order, Preliminary Injunction and, in the Alternative, an Expedited Trial.  Wachovia requests such relief because, due to the exigent circumstances surrounding the filing of this action, it did not have an opportunity to review the memorandum drafted by counsel before it was submitted to the Court on October 5, 2008.

Dated: October 9, 2008

Respectfully submitted,

BOIES, SCHILLER & FLEXNER, LLP

David Boies
Robert Silver
333 Main Street
Armonk, New York 10504
Phone: (914) 749-8200
Fax: (914) 749 8300

George T. Frampton, Jr.
Amy L. Neuhardt
Philip M. Bowman
575 Lexington Avenue, 7th Floor
New York, New York 10022
Phone: (212) 446-2300
Fax: (212) 446-2350

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x

WACHOVIA CORPORATION,     :

                          :

        Plaintiff,           :

                          :

    *– against –*        :        **Case No.**    08 CV 8503 (LAK)

                          :

CITIGROUP, INC,        :

                          :

        Defendant.     :
------------------------------------------------------------x

**CORRECTED MEMORANDUM OF LAW IN SUPPORT OF WACHOVIA**
**CORPORATION'S MOTION FOR A TEMPORARY RESTRAINING ORDER,**
**PRELIMINARY INJUNCTION AND, IN THE ALTERNATIVE, AN EXPEDITED**
**TRIAL**

BOIES, SCHILLER & FLEXNER, LLP

David Boies
Robert Silver
333 Main Street
Armonk, New York 10504
Phone: (914) 749-8200
Fax: (914) 749 8300

George T. Frampton, Jr.
Amy L. Neuhardt
Philip Bowman
575 Lexington Avenue, 7th Floor
New York, New York 10022
Phone: (212) 446-2300
Fax: (212) 446-2350

**TABLE OF CONTENTS**

Page No.

FACTUAL BACKGROUND ................................................................................................ 1

ARGUMENT ...................................................................................................................... 8

I.     THERE IS NO PRIOR PENDING STATE COURT ACTION ..................................... 8

II.    EVEN IF THERE WERE A PRIOR PENDING STATE COURT ACTION,
THE RELIEF SOUGHT HERE WOULD NOT BE BARRED BY THAT
ACTION ........................................................................................................... 11

III.   WACHOVIA IS ENTITLED TO A TEMPORARY RESTRAINING ORDER
AND A PRELIMINARY INJUNCTION ................................................................ 12

A.   Wachovia Will Suffer Irreparable Harm Absent Immediate Injunctive Relief. ........... 13

B.   The Balance of the Hardships Overwhelmingly Favors Wachovia. ............................ 14

C.   The Public Interest Overwhelmingly Favors the Requested Relief .............................. 15

D.   Wachovia Is Likely to Succeed on the Merits of Its Claim .......................................... 15

     1.   Wachovia is Likely To Succeed on the Merits of Its Claim because
Section 126(c) of the Emergency Economic Stabilization Act of 2008
Renders the Letter Agreement and the Term Sheet Unenforceable. .................... 15

     2.   The Letter Agreement Is Invalid and Unenforceable Because it Purports to
Require the Board of Wachovia to Breach its Fiduciary duties to its
shareholders ........................................................................................................ 17

E.   No Bond Should be Required Because Citigroup will not be Harmed by the
Injunction and Because Wachovia Faces Irreparable Harm if a Bond is
Required. ............................................................................................................... 19

IV.   In the alternative, the court should order an expedite trial on Merits .......................... 20

CONCLUSION ................................................................................................................. 21

## TABLE OF AUTHORITIES

**Page No.**

**Cases**

*Kalnit v. Eichler*, 99 F.Supp.2d 327 (S.D.N.Y. 2000) ...................................................... 18

*Local 1814, Int'l Longshoremen's Ass'n v. New York Shipping Ass'n*, 965 F.2d 1224 (2d
    Cir. 1992) ............................................................................................................................. 12

*Omnicare, Inc. v. NCS Healthcare, Inc.*, 818 A.2d 914 (Del. Supr. 2003) ..................................... 17

*Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904 (2d Cir. 1990) ........................................... 13

*Standard & Poor's Corp. v. Commodity Exchange, Inc.*, 683 F.2d 704 (2d Cir. 1982) ............... 13

*TCPIP Holding Co., Inc. v. Haar Commc'ns, Inc.*, 244 F.3d 88 (2d Cir. 2001) ........................... 12

*Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co. Ltd.*, 339 F.3d 101 (2d Cir. 2003) ....... 12

**Statutes**

North Carolina General Statutes § 55-8-30(a) ............................................................................. 19

**Other Authorities**

12 U.S.C. § 1823(c) (11) ................................................................................................................ 17

Plaintiff Wachovia Corporation ("Wachovia") respectfully submits this Memorandum in Support its motion for a temporary restraining order and preliminary injunction enjoining Citigroup, Inc. ("Citigroup") from (i) taking any steps to interfere with or impede the orderly progress of the merger agreement entered into between Wachovia and Wells Fargo & Co. ("Wells Fargo") (the ("Wells Fargo Transaction"), and/or (ii) invoking putative agreements between Citigroup and Wachovia dated September 29, 2008 to require Wachovia to negotiate (or accept) any transaction that is less favorable to shareholders than the Wells Fargo Transaction; and, in the alternative, for an expedited trial on the merits.

## FACTUAL BACKGROUND

On September 25, 2008, the Federal Deposit Insurance Corporation ("FDIC") seized Washington Mutual Bank, resulting in a downward financial pressure in the market on the price of Wachovia stock.  In addition, the market decline that resulted from the delay in Congress to approve a bailout package eroded Wachovia's liquidity.  On Friday, September 26, a "silent run" began on Wachovia's deposits as borrowers began to draw down on lines of credit and depositors removed funds from their deposit accounts. Wachovia's ability to borrow from other banks began to be compromised as the costs of insurance products that lenders needed to cover the risk of lending to Wachovia began to escalate.

In response to these concerns Wachovia and Citigroup entered into a Confidentiality Agreement and initiated intense substantive negotiations regarding a possible acquisition of portions of Wachovia by Citigroup to help Wachovia address its liquidity concerns.

1

On Saturday, September 27, 2008, Wells Fargo indicated an interest in purchasing Wachovia in discussions that took place between the Chairman of Wells Fargo, Richard M. Kovacevich, and Wachovia's Chairman, Robert K. Steel.

Both Wells Fargo and Citigroup conducted extensive due diligence investigations of Wachovia on September 27 and 28. Wachovia's outside counsel, Sullivan & Cromwell, prepared and transmitted a draft Agreement and Plan of Merger to counsel for Wells Fargo, Wachtell, Lipton, Rosen & Katz. Wells Fargo had indicated in discussions its interest in purchasing all of Wachovia in a stock-for-stock purchase, without government assistance. Citigroup had indicated interest in acquiring only Wachovia's banking subsidiaries in a transaction that would require government assistance.

At approximately 6:00 p.m. on Sunday, September 28, Mr. Kovacevich informed Mr. Steel that Wells Fargo was not prepared to offer to acquire Wachovia without government assistance and on such a compressed timetable.

Officials from the FDIC contacted Wachovia's executives shortly after Wells Fargo indicated that it was not prepared to make an offer. The FDIC officials advised Wachovia that the FDIC believed that no transaction with Citigroup or Wells Fargo could be effected without government assistance and that the FDIC had concluded that Wachovia would not have sufficient liquidity to allow Wachovia's bank subsidiaries to open for business on Monday or Tuesday. The FDIC confirmed its view that this situation posed a systemic risk to the banking system, and that the FDIC was prepared to exercise its powers under Chapter 13 of the Federal Deposit Insurance Act, 12 U.S.C. §1832, to effect an open bank assisted transaction with Citigroup, and committed to use taxpayer money to limit Citigroup's losses on a loan portfolio of $312 billion loan

portfolio to $42 billion if the transaction were consummated. The FDIC instructed Wachovia to negotiate with Citigroup.

On the morning of September 29, 2008, Mr. Steel informed the Board that the FDIC had indicated to Wachovia that its banking subsidiaries would not be permitted to open for business that morning unless the proposed transaction with Citigroup -- which it had been considering over the previous two days, and which included government assistance -- was accepted. The Board was informed that Wachovia had two options: (1) to place Wachovia Corporation into bankruptcy and its banking subsidiaries into receivership; or (2) enter a transaction with the FDIC and Citigroup. The Board voted in favor of the transaction with the FDIC and Citigroup.

Wachovia proceeded that same day to sign a three-party Agreement-in-Principle (the "Term Sheet") with the FDIC and Citigroup that contemplated the acquisition by Citigroup of Wachovia's banking assets for approximately $2.1 billion, or $1 per Wachovia share. That document, which by its explicit terms is not binding on any of the parties thereto, set forth certain basic terms of a transaction. The Term Sheet provided that there was no binding agreement between the parties unless and until the parties enter into definitive agreements providing for all necessary terms and conditions of a transaction that were satisfactory to each party. Any definitive agreement would have required the approval of Wachovia's shareholders to be effective. Also on September 29, 2008, Wachovia and Citigroup entered into a letter Agreement (the "Letter Agreement") that purported to restrict Wachovia's ability to entertain other offers.

Following the signing of the Term Sheet and the Letter Agreement, intensive negotiations between the parties ensued toward reaching definitive agreements that would

be presented to Wachovia's shareholders for approval. Those negotiations were conducted earnestly and in good faith by a team of Wachovia employees and outside advisors. Wachovia was under tremendous pressure to conclude a transaction with Citigroup by the following Monday. Negotiations proved extremely complicated and difficult. The inherent nature of Wachovia's fully integrated organization caused the negotiations over how to split apart the organization to be complex. Wachovia's financial advisors indicated to Wachovia that the terms and conditions in the Term Sheet might compromise the solvency and viability of the portions of Wachovia not acquired by Citigroup following completion of the proposed transaction. Some of Citigroup's demands were contrary to the Term Sheet. As of Thursday night, October 2, 2008, many substantive open issues remained between the parties, and the likelihood of finalizing a definitive agreement by the Friday deadline remained uncertain.

On October 2, 2008 at approximately 7:00p.m., Chairman Sheila Bair of the FDIC called Mr. Steel to ask him if he had received a call from Chairman Kovacevich of Wells Fargo proposing an unassisted merger transaction to purchase Wachovia in its entirety that would result in Wachovia's shareholders receiving $7 per share of common stock. Chairman Bair shortly thereafter called Jane Sherburne, General Counsel of Wachovia, and told her that Wachovia would receive a stock-for-stock merger offer from Wells Fargo at $7 per share. Wachovia had had no contact with Wells Fargo between the execution of the Letter Agreement with Citigroup and the prior Wells Fargo proposal other than a brief conversation on the morning of September 29 in which Mr. Kovacevich congratulated Mr. Steel on the Citigroup deal.

4

At approximately 9:00 p.m. on October 2, 2008, Wells Fargo transmitted an executed Agreement and Plan of Merger to Mr. Steel. That Agreement was for an unassisted stock-for-stock whole company transaction that would result in Wachovia's shareholders receiving Wells Fargo stock worth approximately $7.00 per share of common stock.

Wachovia's Board met by telephone conference call at 11:00 p.m. to review the Wells Fargo proposal. At that meeting, Wachovia's financial advisors, Goldman Sachs and Perella Weinberg Partners, both advised the Board that they were prepared, subject to completion of due diligence investigations and final financial analysis, to provide their opinions to the Board that the consideration to be received by Wachovia shareholders in the proposed Wells Fargo transaction would be fair from a financial point of view. After extensive consideration and discussion by the Board, the Board exercised its fiduciary duties under North Carolina law and approved accepting the Wells Fargo proposal as the superior offer, subject to receipt of fairness opinions from Goldman Sachs and Perella Weinberg Partners. Goldman Sachs and Perella Weinberg Partners delivered their fairness opinions orally early in the morning of Friday, October 3. Mr. Steel executed the Agreement and Plan of Merger, and together with Chairman Bair called Mr. Kovacevich to inform him that Wachovia's Board had accepted the Wells Fargo proposal. Since that time, Wells Fargo has provided ongoing financial support to Wachovia, allowing Wachovia to remain open.

The Wells Fargo proposal is superior to the Citigroup proposal for the following reasons:

- the price to shareholders is substantially greater;

5

- it is a whole company transaction - the Citigroup transaction separates the existing Wachovia franchise and destroys the potential future earnings power of having wealth management, retail financial advisory and general banking together in a combined entity;

- all Wachovia preferred stock is assumed by Wells Fargo- the Citigroup proposal would have Wachovia cease paying preferred stock dividends and then launch an exchange offer based on 45% of liquidation preference;

- no government assistance is required for the Wells Fargo transaction;

- unlike the Citigroup proposal, the Wells Fargo transaction does not trigger any rights by Prudential Financial under the Wachovia Securities JV, pursuant to which Wachovia could be exposed to liabilities in excess of $5 billion;

- it does not force a division of Wachovia Securities by extracting the Investment Service Group—Branch Channel out of the branch banks from the rest of Wachovia Securities;

- the surviving company will continue to pay common stock dividends ($0.067 per quarterly share pro forma); whereas the Citigroup proposal would have Wachovia cease paying a common stock dividend;

- Wells Fargo is the only AAA-rated financial institution by the rating agencies, which provides a lower cost of funding for the surviving entity. Citigroup's proposal leaves the surviving Wachovia Corporation in a position where its debt would likely be below investment grade because Citigroup proposes to keep the deposit spread on Wachovia Securities' sweep deposits and thereby deprive Wachovia of a needed source of funding; and

- the entire transaction structure is simpler, easier for shareholders to understand, more likely to close and more likely to receive shareholder approval than the Citigroup offer.

Citigroup has without basis publicly announced that Well Fargo has interfered with its Letter Agreement with Wachovia, provided the Letter Agreement to the press in violation of a Confidentiality Agreement, and asserted that the Wells Fargo Transaction is improper, unenforceable and prohibited by the Letter Agreement.

Citigroup's efforts to undermine and create uncertainty about the Wells Fargo Transaction severely damages Wachovia. The announcement of that transaction caused an increase of approximately $ 10 billion in the common and preferred stock of market capitalization of Wachovia. Unless the issues and threats raised by Citigroup are

resolved promptly, Wachovia's shareholders, creditors and employees are at risk as are the interests of the public generally.

Citigroup is not prohibited by the Merger Agreement with Wells Fargo from offering a better proposal than that offered by Wells. However, instead of competing with that offer, Citigroup seeks to interfere with a transaction that is far more beneficial to the shareholders of Wachovia and to the American taxpayer than anything Citigroup has offered.

On October 3, 2003, Congress enacted and the President signed the Emergency Economic Stabilization Act of 2008 ("EESA"). Section 126C of the EESA provides that

> UNENFORCEABILITY OF CERTAIN AGREEMENTS – <u>No provision contained in any existing or future standstill, confidentiality, or other agreement that, directly or indirectly</u> –
>
> > (A) affects, restricts, or limits the ability of any person to offer or acquire,
> >
> > (B) prohibits any person from offering to acquire or acquiring, or
> >
> > (C) prohibits any person from using any previously disclosed information in connection with any such offer to acquire or acquisition of,
>
> all or part of any insured depository institution, including any liabilities, assets, or interest therein, in connection with any transaction in which the [FDIC] exercises its authority under section 11 or 13, <u>shall be enforceable against or impose any liability on such person, as such enforcement or liability shall be contrary to public policy.</u>

A principal purpose of the EESA is to protect the interests of the "taxpayers of the United States" as well as shareholders and creditors of affected companies by making certain that exclusivity agreements such as that between Citigroup and Wachovia cannot be used to bar a superior offer from another bidder than is more beneficial to the

taxpayer. Impeding such a competing superior bid is precisely what Citigroup is attempting to accomplish here.

## ARGUMENT

### I.   THERE IS NO PRIOR PENDING STATE COURT ACTION

At approximately 3:45 p.m. on October 4, 2008 counsel for Citigroup Inc. ("Citigroup") faxed to the general counsel of Wachovia Corporation ("Wachovia") a document titled "Supreme Court of the State of New York New York County Verified Complaint" ("Citigroup Complaint 1", Ex. 1 hereto).

At 4:03 p.m. outside counsel for Wachovia, Boies, Schiller & Flexner LLP (the "Boies Firm"), contacted counsel for Citigroup advising counsel for Citigroup that the Boies Firm represented Wachovia and requesting: "Please include us in any communications with any court that relate to any claim relating in any way to Wachovia." (Ex. 2, hereto).

Citigroup counsel apparently contacted Justice Ramos of the New York Supreme Court ex parte and arranged to have counsel for Citigroup appear before Justice Ramos at his home in Cornwall, Connecticut later that day to seek a TRO. Counsel for Wachovia and Wells Fargo were not given an opportunity to appear in person before Justice Ramos. At approximately 4:40 p.m., Justice Ramos called Wachovia's General Counsel at home and asked her to address why he should not enter the Order presented by the Citigroup lawyers standing in his living room. The Wachovia General Counsel presented an argument.

Citigroup Complaint 1 was expressly based in part on Section 126 of the federal Emergency Economic Stabilization Act of 2008 ("EESA") arid at approximately 5:15 p.m. Wachovia (and Wells Fargo & Co. ("Wells Fargo"), which was also named as a

8

defendant in Citigroup Complaint 1) filed a Notice of Removal (Ex. 3, hereto without attachments)) with the United States District Court for the Southern District of New York.

The Notice of Removal was faxed to Justice Ramos's chambers between 6:00 p.m. and 6:30 p.m. and during a subsequent telephone call to Justice Ramos, counsel for Wachovia informed Justice Ramos of the removal and argued that the removal meant that the New York State Court no longer had jurisdiction to enter an order. Nevertheless, following the termination of the telephone call between Justice Ramos and counsel for Wachovia and Wells Fargo, Justice Ramos at 7:14 p.m. purported to enter an Order purporting to extend the exclusivity period in the Letter Agreement (the "First State Order", Ex. 4). The press has reported, apparently based on Citigroup statements, that there was a three-hour hearing before Justice Ramos. Counsel for Wachovia and Wells Fargo participated in three separate telephone conversations with Justice Ramos that totaled no more than 40 minutes. Wachovia Counsel could not hear the arguments presented by Citigroup's counsel and are unaware of what occurred during the ex parte portion of the hearing.

After the termination of their telephone calls with Justice Ramos shortly before the First State Order was signed, neither counsel for Wachovia nor counsel for Wells Fargo was ever thereafter given notice of any communication with, or appearance before, Justice Ramos, or given an opportunity to participate in any such communication or appearance.

A telephonic conference with the United States District Court and counsel for Wachovia, Wells Fargo, and Citigroup was held at 8:00 pm. At that conference counsel

for Citigroup told the Court that Citigroup's Complaint 1 had been voluntarily dismissed and that a new complaint had been filed in state court which excised the references to EESA Section 126, and that a new TRO had been issued by Justice Ramos.

At the 8:00 p.m. conference counsel for Wachovia noted that they had been given no notice of any second complaint or new TRO and requested copies of any complaint or TRO that had in fact been filed or signed. Counsel for Citigroup said he would provide such copies.

Prior to 2:23 a.m. on October 5, 2008, Wachovia had received no copy of any second complaint or new TRO. At 2:23 a.m. counsel for Wachovia was sent a purported new TRO dated October 4, 2008 at 9:40 p.m. (the "Second State Order"). The Order did not, in fact, restrain any party in any way, but purported again to extend the exclusivity period. At 2:25 a.m. on October 5, 2008, Wachovia counsel was sent a document labeled "Verified Complaint Conformed Copy 9:21 pm" (Citigroup Complaint 2).

At 11:19 p.m. on October 4, several hours before Citigroup provided its purported Citigroup Complaint 2 to Wachovia counsel, counsel for Citigroup was sent Wachovia's Complaint for Declaratory Judgment (the "Wachovia Complaint", Ex. 5). The Wachovia Complaint had been filed at 10:26 p.m. and was answered by Citigroup the morning of October 5.

Wachovia's case is now pending before this Court and issue has been joined by Citigroup's answer. Citigroup's second state case has not yet been properly filed or served and certainly was not properly filed and served at the time Wachovia's action was commenced on October 4.

10

Accordingly, contrary to Citigroup's argument, there is no prior pending state court case that limits this Court's jurisdiction. Citigroup Complaint 1 had been voluntarily dismissed, and Citigroup Complaint 2 was not pending, at the time Wachovia's federal action was commenced.

## II. EVEN IF THERE WERE A PRIOR PENDING STATE COURT ACTION, THE RELIEF SOUGHT HERE WOULD NOT BE BARRED BY THAT ACTION

The pendency of a related state-court case does not prohibit a federal court from exercising its own jurisdiction. That is particularly true where, as here:

(a) the federal action vindicates an important federal interest;

(b) the state court litigant has abandoned the issue raised in the federal action; and

(c) the relief sought in the federal action is not inconsistent with any relief previously granted in the state action.

Here, the relief sought by the present federal action vindicates critical federal interests. Wachovia seeks to prevent Citigroup from taking further action to defeat a transaction that is favorable to U.S. taxpayers and the shareholders of a major financial U.S. banking institution and force Wachovia instead to engage in transaction that would require FDIC assistance, thereby affecting U.S. taxpayers, and that is to the detriment of the Wachovia shareholder.

In addition, by voluntarily dismissing Complaint 1, which contained a cause of action under the EESA, and filing Complaint 2 without that cause of action, Citigroup effectively abandoned its interest in resolving the applicability of the EESA to the Letter Agreement and Term Sheet.

11

Finally, the relief sought by Wachovia here is not inconsistent with the relief previously obtained by Citigroup in the First and Second State Court TROs. Those orders do no more than extend the stated termination date of the Letter Agreement without addressing the scope or validity of that Letter Agreement. Wachovia is not asking this court to overturn those orders. Rather, Wachovia seeks an order prohibiting Citigroup from taking any steps to interfere with or impede the orderly progress of the Wells Fargo Transaction and/or (ii) invoking the Letter Agreement or Term Sheet to require Wachovia to negotiate (or accept) any transaction that is less favorable to shareholders than the Wells Fargo Transaction. This relief can be ordered by this Court wholly consistent with the continued existence of either of the State Court TROs.

## III.   WACHOVIA IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

The "traditional standards which govern consideration of an application for a temporary restraining order . . . are the same standards as those which govern a preliminary injunction." *Local 1814, Int'l Longshoremen's Ass'n v. New York Shipping Ass'n*, 965 F.2d 1224, 1228 (2d Cir. 1992). In both contexts, the plaintiff must establish "'(1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly in [plaintiff's] favor.'" *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co. Ltd.*, 339 F.3d 101, 108 (2d Cir. 2003) (quoting *TCPIP Holding Co., Inc. v. Haar Commc'ns, Inc.*, 244 F.3d 88, 92 (2d Cir. 2001)). In addition, "Irreparable harm must be shown by the moving party to be imminent, not remote or speculative, . . . and the alleged

injury must be one incapable of being fully remedied by monetary damages." *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990).

Finally, any relevant interests of the public at large must also inform a determination concerning the propriety of a temporary restraining order. *See, e.g., Standard & Poor's Corp. v. Commodity Exchange, Inc.*, 683 F.2d 704 (2d Cir. 1982) ("Although this Circuit's settled preliminary injunction standard does not explicitly mention the public interest, as do other Circuits' standards, we have recognized that, as a court of equity, we "may go much further both to give or to withhold relief in furtherance of the public interest than where only private interests are involved.") (internal citations omitted).

Wachovia satisfies all of the foregoing requirements and the public interest further counsels strongly in favor of both a temporary restraining order and a preliminary injunction.

## A.   Wachovia Will Suffer Irreparable Harm Absent Immediate Injunctive Relief.

The significant and irreparable harm to Wachovia and its public shareholders absent immediate injunctive relief (and in addition, as discussed in Section IV below, the harm to the public interest that would likewise result) is indisputable.

Citigroup is, in effect, attempting – through a patent violation of the most recent and perhaps most crucial federal legislation of recent times – to interfere with the recently struck deal between Wells Fargo and Wachovia solely in an effort to eliminate competition and regain the leverage it enjoyed a week ago to force Wachovia into an alternative deal that is not only worse for Wachovia and its public shareholders, but indeed, for the U.S. government and the taxpayers.  If, through these efforts, Citigroup is

13

successful in delaying the Wells Fargo deal *even for a matter of days*, the results will be irreparable -- customers will lose confidence and take their business elsewhere, counterparties will decline to engage in transactions, talent will flee and Wachovia will confront the spectre of receivership. Simply put, there is *no* way to reverse the harm that will result from the continued uncertainty surrounding Wachovia's future.

### B.   The Balance of the Hardships Overwhelmingly Favors Wachovia.

The balancing of the equities favors entry of immediate injunctive relief. As discussed above, absent the intervention of this Court, Wachovia could be forced to close its doors by early to mid-week. In this time of near-unprecedented crisis in the United States financial industry, such an occurrence could well not only destroy Wachovia, but send tremors through world markets.

In contrast to this far-reaching negative impact on Wachovia and the public as a whole in the absence of injunctive relief, Citigroup will suffer no harm if the order is entered. Citigroup was never entitled to <u>close</u> a transaction with Wachovia under the terms of the Term Sheet. Rather, at best, it was entitled to negotiate with Wachovia until October 6, 2008, the termination date, as outlined in the Letter Agreement, at which time it may well have walked away with no deal. Moreover, Citigroup still has the legal opportunity to make an offer to purchase Wachovia, because the Wells Fargo Transaction does not prohibit Wachovia from accepting a better proposal than that offered by Wells Fargo. These scenarios remain true regardless of whether an injunction is issued against Citigroup today. Accordingly, Citigroup will suffer no harm from entry of an injunction, a marked contrast to the far-reaching harm that could well result in the absence of immediate injunctive relief to Wachovia.

14

C.      **The Public Interest Overwhelmingly Favors the Requested Relief.**

As the unceasing media reports, the recent expedited legislative activity and

enactments, and the federal regulators' keen interest and on-going efforts make clear, any

result that threatens Wachovia's continuing vitality would have devastating effects not

only for Wachovia and its public shareholders, but indeed, for the entire U.S. banking

industry.  Moreover, any further disruption in the American banking industry at this point

would likewise be devastating to the public at large, which not only relies on the

continuing vitality of that industry for its very survival but likewise stands to shoulder an

even more onerous tax burden if further governmental assistance to this industry is

required.  Thus, there is no question here that the public interest not only favors – but

indeed compels – the immediate relief requested by this motion.

D.      **Wachovia Is Likely to Succeed on the Merits of Its Claim**

1.      **Wachovia is Likely to Succeed on the Merits of Its Claim because Section 126(c) of the Emergency Economic Stabilization Act of 2008 Renders the Letter Agreement and the Term Sheet Unenforceable.**

The Wells Fargo Transaction is valid and proper because the Letter Agreement

and the Term Sheet were rendered unenforceable with enactment of the Emergency

Economic Stabilization Act of 2008 ("EESA") on October 3, 2008.  Section 126(c) of

EESA provides as follows:

> UNENFORCEABILITY OF CERTAIN AGREEMENTS – No provision contained in any existing or future standstill, confidentiality, or other agreement that, directly or indirectly –
>
> (A) affects, restricts, or limits the ability of any person to offer or to acquire,
>
> (B) prohibits any person from offering to acquire or acquiring, or

15

> (C) prohibits any person from using any previously disclosed information in connection with any such offer to acquire or acquisition of,
>
> all or part of any insured depository institution, including any liabilities, assets, or interest therein, in connection with any transaction in which the [FDIC] exercises its authority under section 11 or 13, <u>shall be enforceable against or impose any liability on such person, as such enforcement or liability shall be contrary to public policy.</u>

12 U.S.C. § 1823(c) (11) (emphasis added).[1]  Moreover, one of the purposes of the EESA is to protect the interests of the "taxpayers of the United States" as well as shareholders and creditors of the affected companies.  EESA Sec. 2

The Letter Agreement and Term Sheet are clearly covered by this provision.  Both agreements were existing on the date of enactment of the EESA.  They both were created in connection with the FDIC's exercise of authority under Section 13 of the Federal Deposit Insurance Act.

Next, these agreements clearly restrict the type of competitive conduct protected by the EESA.  The Letter Agreement purports to directly prohibit Wachovia from:

> (i) soliciting, initiating or taking any action to facilitate or encourage the submission of any competing offer;
>
> (ii) entering into or participating in any discussions regarding a competing offer;
>
> (iii) providing any information relating to Wachovia's business or otherwise; cooperate with a third party's efforts to make a competing offer; or
>
> (iv) entering into a competing offer.

Similarly, by setting the terms under which the Citigroup transaction would have to be negotiated -- even if another, better offer presented itself -- the Term Sheet indirectly

---

[1] For the Court's convenience, a copy of the relevant portion of the EESA is attached to this memorandum.

16

prevents Wachovia from entering into or negotiating a competing offer.   Accordingly, under the plain language of the EESA, Citigroup may not enforce the Letter Agreement or the Term Sheet against Wachovia.[2]

**2.    The Letter Agreement Is Invalid and Unenforceable Because it Purports to Require the Board of Wachovia to Breach its Fiduciary Duties to its Shareholders**

Even if the EESA did not prohibit enforcement of the Letter Agreement, the Letter Agreement would still be invalid because it purports to bar Wachovia's Board from informing Wachovia's shareholders of the superior Wells Fargo offer and from accepting that offer. The law is clear that to "the extent that a [merger] contract, or a provision thereof, purports to require a board to act or not act in such a fashion as to limit the exercise of fiduciary duties, it is invalid and unenforceable.'" *Omnicare, Inc. v. NCS Healthcare, Inc.*, 818 A.2d 914, 936 (Del. Supr. 2003) (citing *Paramount Commc'ns Inc. v. QVC Network Inc.*, 637 A.2d 34, 51 (Del.1993) and Restatement (Second) of Contracts § 193). *See also Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173, 184 (Del.1986) ("The no-shop provision, like the lock-up option, while not per se illegal, is impermissible under the *Unocal* standards when a board's primary duty becomes that of an auctioneer responsible for selling the company to the highest bidder. The agreement to negotiate only with Forstmann ended rather than intensified the board's involvement in the bidding contest."); Restatement (Second) of Contracts § 193 ("A promise by a fiduciary to violate his duty as a fiduciary is unenforceable on grounds of public policy, as is a promise that tends to induce such a violation.  In an exceptional case, however, a

---

[2] Moreover, the Wells Fargo Transaction is better for the American taxpayer because, unlike the Citigroup Transaction, it does not require assistance from the FDIC.  (*Id.* at —.)  Enforcement of the EESA against the Letter Agreement and Term Sheet then, is fully consistent with the purposes of the Act.

court may conclude that the interests of third parties require enforcement."); *Kalnit v. Eichler*, 99 F.Supp.2d 327, 337 n. 9 (S.D.N.Y. 2000) (quoting *Paramount Communications Inc. v. QVC Network Inc.*, 637 A.2d 34, 51 (Del. 1994) and citing *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173, 184 (Del. 1986)).

Because Wachovia is a North Carolina corporation, the duties of its board of directors are governed by North Carolina law. The North Carolina Business Corporation Act provides that:

"(a)   A director shall discharge his duties as a director, including his duties as a member of a committee:

(1)   In good faith;

(2)   With the care an ordinarily prudent person in a like position would exercise under reasonable circumstances; and

(3)   In a manner he reasonably believes to be in the best interests of the corporation"

North Carolina General Statutes § 55-8-30(a). Under this standard, a North Carolina board is required to consider and present to shareholders alternative offers for the sale of the company, and an agreement that prevents them from doing so is invalid and unenforceable. *First Union Corp. v. SunTrust* 2001 WL 1885686 (N.C.Super.). In *First Union Corp.* the directors of Wachovia approved a merger agreement with First Union. The agreement provided that even if the shareholders of Wachovia voted down the merger the merger agreement would not terminate until a specific date in the future. Wachovia argued that this provision was valid because it allowed a re-vote by the Wachovia shareholders if they initially rejected the First Union merger. The court disagreed and invalidated the provision because it tied the directors' hands and prevented them from pursuing or negotiating another merger agreement. As the court explained:

18

> If the Wachovia shareholders vote against the merger, this board has impermissibly tied its hands and cannot do the very thing the Delaware Supreme Court find to be of fundamental importance to the shareholders – "negotiating a possible sale of the corporation." The fact that directors can exercise their fiduciary duty by breaching the contract does not solve the problem. Directors should not enter into a contract that they know their fiduciary duty could cause them to breach.

*First Union Corp. v. SunTrust* at § 157. Here, the Letter Agreement, among other things, states that Wachovia and its board shall not "directly or indirectly . . . enter into or participate in any discussions or negotiations with . . . or otherwise cooperate in any way with . . . any third party that is seeking to make or has made an Acquisition Proposal." On its face, the Letter Agreement thus purports to preclude the Wachovia board from considering and informing shareholders of superior acquisition offers, and is thus invalid and unenforceable as a matter of law.

> **E.    No Bond Should be Required Because Citigroup will not be Harmed by the Injunction and Because Wachovia Faces Irreparable Harm if a Bond is Required.**

No bond should be required in connection with Wachovia's present request for preliminary injunctive relief because, as discussed more fully above, Citigroup will not be harmed by such relief. Federal Rule of Civil Procedure 65(c) provides as follows:

> No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

Fed.R.Civ.P. 65(c). The Second Circuit has made clear that a district court has discretion, under Rule 65(c), to decide that, under the circumstances, no security is required. *See Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997) ("Rule 65(c) gives the district court wide discretion to set the amount of a bond, and even to

dispense with the bond requirement where there has been no proof of likelihood of harm . . . .") (internal quotation marks omitted)). Here, as shown above, Citigroup will not be harmed in any way by the relief requested in the present motion. Thus, it is appropriate in this case to dispense with the bond requirement altogether.

## IV.   IN THE ALTERNATIVE, THE COURT SHOULD ORDER AN EXPEDITED TRIAL ON MERITS

For the reasons set forth in sections I.A through C above and to prevent the irreparable harm to Wachovia and the financial markets described above, if the court does not grant the preliminary injunctive relief Wachovia seeks, Wachovia respectfully requests that the court order an expedited trial on the merits.

**CONCLUSION**

For all of the foregoing reasons, Wachovia respectfully requests that the Court enter a temporary restraining order and preliminary injunction enjoining Citigroup Inc. ("Citigroup") from (i) taking any steps to interfere with or impede the orderly progress of the Wells Fargo Transaction, (ii) invoking the Letter Agreement or Term Sheet to require Wachovia to negotiate (or accept) any transaction that is less favorable to shareholders than the Wells Fargo Transaction.  In the alternative, Wachovia requests that the Court order an expedited trial on the merits.

Dated: October 8, 2008

Respectfully submitted,

BOIES, SCHILLER & FLEXNER, LLP

David Boies
333 Main Street
Armonk, New York 10504
Phone: (914) 749-8200
Fax: (914) 749 8300

George T. Frampton, Jr.
575 Lexington Avenue, 7th Floor
New York, New York 10022
Phone: (212) 446-2300
Fax: (212) 446-2350

21